# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| CARLIN ROBINSON, ET AL. | : | |
| | : | |
| v. | : | |
| | : | Civil No. CCB-12-192 |
| | : | |
| DANIEL A. LIOI, ET AL. | : | |
| | : | |
| | : | |

## MEMORANDUM

This case arises from the murder of Veronica Williams ("Ms. Williams") by her husband, Cleaven Lawrence Williams, Jr. ("Mr. Williams") in November 2008. Weeks before she was killed, Ms. Williams filed assault charges against her husband. An arrest warrant was issued, but the Baltimore City Police Department had not served the warrant on Mr. Williams when, on November 17, 2008, he stabbed Ms. Williams to death on a Baltimore City street. Carlin Robinson, as Guardian and Next Friend of Ms. Williams's children, and Eunice Graves, Ms. Williams's mother, have filed a civil suit against Daniel Lioi ("Lioi"), Deputy Major of the Baltimore City Police Department's Eastern District, the Baltimore City Police Department ("BCPD"), and Cleaven Williams. The plaintiffs allege that due to his prior relationship with Mr. Williams, Lioi departed from normal procedures in serving the arrest warrant and thereby enabled Mr. Williams to remain free at the time he killed his wife.

The plaintiffs have asserted claims against Lioi, the BCPD, and Mr. Williams for violating Ms. Williams's due process rights under 42 U.S.C. § 1983 and conspiring to violate Ms. Williams's constitutional rights under 42 U.S.C. § 1985. They have also asserted state tort law claims for wrongful death, survival action, battery, gross negligence, reckless endangerment,

1

intentional infliction of emotion distress, common law conspiracy, conversion, and fraud and intentional misrepresentation.  Now pending are BCPD's Motion to Dismiss (ECF No. 9) and Lioi's Motion to Dismiss (ECF No. 10).  The matter has been fully briefed, and no hearing is necessary.  *See* Local Rule 105.6.   For the reasons that follow, BCPD's Motion to Dismiss will be granted and Lioi's Motion to Dismiss will be denied.

## Background

Mr. and Ms. Williams lived in Baltimore, Maryland with their three young children. According to the plaintiffs' complaint, Mr. Williams physically and mentally abused his wife throughout the course of their marriage.  In 2008, Ms. Williams filed assault charges against her husband, and a warrant was issued for his arrest.  The plaintiffs allege that BCPD officers, including Lioi, intentionally failed to send the warrant to the department's special domestic violence unit and instead retained control over the warrant because they wished to protect Mr. Williams.  The plaintiffs further allege that BCPD officers, including Lioi, warned Mr. Williams of the warrant and feigned efforts to serve him in order to allow Mr. Williams to evade arrest. According to the plaintiffs, Mr. Williams surrendered himself at the Eastern District precinct of the BCPD three days before he killed his wife, but the officers falsely claimed the warrant could not be found.

On November 17, 2008, Ms. Williams appeared before the Baltimore District Court in connection with her request for a protective order.  The order was granted.  When Ms. Williams left the courthouse, Mr. Williams attacked and stabbed her repeatedly in broad daylight one block from the courthouse.  Ms. Williams was pregnant with the couple's fourth child at the time.  Three days later, Ms. Williams miscarried and subsequently died of her injuries.  Mr. Williams was found guilty of his wife's murder and is currently incarcerated.  According to the

complaint, Lioi was suspended from the police force in March 2009 after homicide investigators

discovered text messages exchanged between him and Mr. Williams.

## Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of a complaint and does not "resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v.*

*City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and

alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

When ruling on such a motion, the court must "accept the well-pled allegations of the complaint

as true" and "construe the facts and reasonable inferences derived therefrom in the light most

favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However,

the court "need not accept the legal conclusions drawn from the facts, and [] need not accept as

true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint, assumed to be true,

"must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007). The plaintiff's obligation is to *show* sufficiently the

"grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* It is not

sufficient that the well-pleaded facts suggest "the mere possibility of misconduct." *Ashcroft v.*

*Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). Rather, to withstand a motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face," meaning the court could draw "the reasonable inference that the defendant

is liable for the conduct alleged." *Id*. at 1949 (internal quotations and citation omitted). A party

moving to dismiss a complaint under Rule 12(b)(6) is "asserting, in effect, that the plaintiff is not

entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 709 (4th Cir. 2007) (citations and alterations omitted).

## Discussion

I.      Baltimore City Police Department

Since filing their complaint, the plaintiffs have clarified that they do not intend to proceed against BCPD on the § 1985 conspiracy claim or any of the enumerated state tort claims.  (ECF No. 13, at 22.)  Consequently, the only claims pending against BCPD are Counts One and Two – the § 1983 claims alleging a violation of Ms. Williams's due process rights.

It is well established that municipalities can be held liable under § 1983.  *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978).  Municipal liability, however, cannot be established under a theory of respondeat superior or vicarious liability.  *See id.* at 691.  Municipalities face liability under § 1983 only if they cause the deprivation of a federal right "through an official policy or custom."  *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999).  Official policies for which municipal liability may incur include "express polic[ies], such as a written ordinance or regulation" and "decisions of a person with final policymaking authority."  *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).   Unofficial actions may constitute a basis for § 1983 liability "if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law."  *Carter,* 164 F.3d at 218 (internal quotation marks and citations omitted).  In order to establish municipal liability, a plaintiff "must demonstrate a direct causal link between [the] policy or custom and the alleged constitutional deprivation."  *Huggins v. Prince George's County, Md.*, 750 F.Supp.2d 549, 554 (D.Md. 2010).

The plaintiffs claim BCPD is liable for the deprivation of Ms. Williams's due process rights for failing to "adequately train, supervise, and discipline its officers against the preferential treatment of certain citizens, including friends." (ECF No. 2, at 11.)[1]  In support of their argument, the plaintiffs have set forth a list of fourteen "examples" of wrongdoing by BCPD officers.  The incidents span from 1994 to 2011 and include a wide range of allegedly corrupt activities by BCPD officers and other officials.  For example, the complaint observes that a BCPD commissioner "provided a letter of recommendation for [a] former police officer … to obtain a handgun even though [that officer] had been fired for using unnecessary force." (*Id.* at 12.)  Elsewhere, the complaint notes "[f]our state prison guards were charged in 2009 with smuggling salmon and vodka to a violent prison gang." (*Id.* at 13.)  The plaintiffs also charge that a BCPD officer declined to issue a citation for unlawful window tinting to a National Football League player in return for an autograph.  (*Id.*)

BCPD argues the plaintiffs cannot succeed on their *Monell* claim because they have not alleged a violation of a federal or constitutional right.  Without deciding whether a right has been violated, the court finds that the plaintiffs have failed to establish that the acts of Lioi or BCPD with respect to Mr. Williams constitute or arise from a municipal custom or policy.  The Supreme Court has emphasized that "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Board of County Comm'rs v. Brown,* 520 U.S. 397, 405 (1997).  A plaintiff seeking to prevail on a *Monell* theory must show "a close fit between the unconstitutional policy and the constitutional violation." *Carter*, 164 F.3d at 218.  "[A] plaintiff

---

[1] The plaintiffs also assert, independent of the *Monell* claim, that BCPD is "vicariously liable for the constitutional violations of its police officers." (ECF 2, at 11.)  As stated, this assertion is incorrect as a matter of law.  *See Monell*, 436 U.S. at 690-91.

cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Id*.

The plaintiffs have not identified a specific BCPD policy which they consider unconstitutional or responsible for BCPD's allegedly unconstitutional police practices.  Instead, the plaintiffs fault BCPD for inadequate training and supervision.  In order to prevail on a claim of failure to train, a plaintiff must establish: (1) "a specific deficiency rather than general laxness or ineffectiveness in training," and (2) "that the deficiency or deficiencies [are] such, given the manifest exigencies of police work, as to make occurrence of the specific violation a reasonable probability rather than a mere possibility."  *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987).  In other words, a plaintiff must show that the "specific deficiency or deficiencies [are] such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run."  *Id.* (internal quotation marks omitted).  Having identified no specific deficiencies in BCPD training practices and no connection between alleged training deficiencies and Ms. Williams's injuries, the plaintiffs have failed to meet their burden to establish liability.

More generally, any theory of municipal liability that stems from an unofficial policy or custom must be supported by "actual or constructive knowledge of its existence by responsible policymakers, and . . . their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices."  *Id.* at 1391.  The plaintiffs have not credibly alleged either knowledge or deliberate inaction on the part of policymakers.  Therefore, the plaintiffs have failed to plead facts sufficient to state a claim against the BCPD, and the court will grant BCPD's Motion to Dismiss.

II.    Lioi

Relief under 42 U.S.C. § 1983 is available to a plaintiff who demonstrates that a police

officer acting under  color of state law deprived the plaintiff of a right, privilege, or immunity

secured by the United States Constitution or by federal law.  The Supreme Court has held that

"[a]s a general matter . . . a State's failure to protect an individual against private violence simply

does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago County*

*Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989).  *DeShaney* clarified that the purpose of the Due

Process Clause "was to protect the people from the State, not to ensure that the State protected

them from each other."  *Id* at 196.   Accordingly, the Due Process Clause "confer[s] no

affirmative right to governmental aid, even where such aid may be necessary to secure life,

liberty, or property interests of which the government itself may not deprive the individual."  *Id.*

Nonetheless, the plaintiffs observe that *DeShaney* carved out – and courts have since

elaborated upon – two exceptions to the general principle that the state is not liable for failing to

protect individuals against private violence.  The first exception revolves around individuals in a

"special relationship" with the state.  *See Pinder v. Johnson*, 54 F.3d 1169, 1175 (4th Cir. 1995)

(en banc).  The second revolves around circumstances in which the state has created or increased

the danger faced by an individual.  *See id.* at 1176-77.  The plaintiffs contend that both

exceptions apply to their claim against Lioi.[2]

---

[2] The plaintiffs filed a Response in Opposition to Defendant Daniel A. Lioi's Motion to Dismiss the
Complaint.  Despite requesting and being granted three extensions of time to reply to the plaintiffs'
opposition motion, Lioi has not filed a reply.  The most recent extension granted Lioi until May 23, 2012
to file a reply; no reply has been filed.  (ECF No. 23.)

a)  *The Special Relationship Exception*

In some circumstances, "an affirmative duty to protect may arise when the state restrains persons from acting on their own behalf."  *Id.* at 1174.  In those cases, "[i]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means."  *DeShaney*, 489 U.S. at 200.  Under those narrow circumstances, the state's failure to protect an individual from private violence may run afoul of the Due Process Clause.

The plaintiffs argue that "the Defendants created a special relationship with Veronica Williams by exercising sufficient control over Cleaven Williams so as to be in a position to prevent foreseeable harm to Veronica Williams."  (ECF No. 13, at 15.)  In support of their argument, the plaintiffs rely largely on case law outside of the Fourth Circuit.  Fourth Circuit precedent, however, offers no support for the extension of *DeShaney*'s "special relationship" to circumstances such as these, in which Ms. Williams was not in the custody of the state at any relevant point.  Indeed, the Fourth Circuit has stated in no uncertain words that "a 'special relationship' is all but synonymous with a custodial relationship."  *Waybright v. Frederick County, MD,* 528 F.3d 199, 207 (4th Cir. 2008); *see also Pinder*, 54 F.3d at 1175 ("Some sort of confinement of the injured party – incarceration, institutionalization, or the like – is needed to trigger the affirmative duty.").

Even drawing all inferences in favor of Ms. Williams as the non-moving party, the court sees no evidence that Ms. Williams faced "a restraint of personal liberty . . . triggering the protections of the Due Process Clause."  *DeShaney,* 489 U.S. at 200.  Accordingly, the plaintiffs

have failed to establish that Lioi should be liable under a "special relationship" theory of § 1983 liability.

b)  *The State-Created Danger Exception*

The Fourth Circuit has acknowledged a second set of circumstances under which the state can be held liable for failing to protect an individual from private violence.  "When the state itself creates the dangerous situation that resulted in a victim's injury, the absence of a custodial relationship may not be dispositive.  In such instances, the state is not merely accused of a failure to act; it becomes much more akin to an actor itself directly causing harm to the injured party." *Pinder*, 54 F.3d at 1177.

Importantly, the "state-created danger" exception applies only to situations in which the state takes affirmative action to create or substantially increase the danger faced by an individual. The Fourth Circuit has emphasized that the mere failure to protect an individual does not constitute affirmative misconduct.  *See id.* at 1175 ("It cannot be that the state 'commits an affirmative act' or 'creates a danger' every time it does anything that makes injury at the hands of a third party more likely."); *see also Mills v. City of Roanoke*, 518 F.Supp.2d 815, 820 (W.D. Va. 2007) ("[I]t is clear that the defendants took no affirmative action.  Instead, the defendants failed to act.  Such an 'omission claim' fails as a matter of law under *Pinder*.").  Rather, "[i]n order to rely on the state-created danger doctrine to impose § 1983 liability, a plaintiff must be able to articulate an action taken by a state actor that creates or substantially enhances a risk that the plaintiff will be harmed by a private actor."  *Sloane v. Kanawha County Sheriff Dept.*, 342 F.Supp.2d 545, 551 (S.D.W. Va. 2004).

Although the Fourth Circuit has not expressly applied the state-created danger doctrine as a basis for due process liability, this case is akin to circumstances under which district courts

have applied the exception.  In *Pullium v Ceresini,* 221 F.Supp.2d 600 (D.Md. 2002), the court

denied a motion to dismiss a complaint alleging due process violations on a theory of state-

created danger.  In that case, a police officer drove the plaintiff's intoxicated husband, who had

assaulted her earlier that day, back to their home and forced the plaintiff to admit him despite her

pleas and expressions of fear.  *Id.* at 601-02.  The plaintiff was assaulted by her husband shortly

after the officers departed, and she subsequently brought suit on a theory of state-created danger.

Based on the record before it, drawing all inferences in the light most favorable to the plaintiff,

the court concluded there was reason to believe the "officer's affirmative misconduct . . .

create[d] the danger."  *Id.* at 605.[3]

      Similarly, in this case, the plaintiffs have plausibly alleged that Lioi violated Ms.

Williams's due process rights.  "The difference . . . between successful and unsuccessful state-

created danger claims is found in the nature of the conduct of the defendant state actor."  *Sloane,*

342 F.Supp.2d at 552.  The current record does not fully set forth or contextualize Lioi's actions.

For example, the full text of the messages exchanged between Mr. Williams and Lioi is not

before the court.  Similarly, the record does not establish the general procedures by which BCPD

handles and serves arrest warrants in cases of domestic violence.  It is therefore not possible at

this stage to determine whether Lioi assisted Mr. Williams in evading capture and, if so, whether

his actions were in fact affirmative in nature or merely represented an omission or failure to act.

At a minimum, however, the plaintiffs have raised their right to relief above a speculative level

by credibly alleging specific affirmative actions taken by Lioi.

---

[3] The district court came to a similar conclusion in *Sloane,* where the plaintiffs sought relief under the
Due Process Clause based on a claim that police officers' aggressive interrogation tactics against a young
man known to be emotionally unstable led him to commit suicide.  342 F.Supp.2d at 553.  The court
concluded that because the plaintiffs credibly alleged that the defendants "engaged in affirmative conduct
that significantly increased the risk that [the plaintiffs' decedent] would be seriously injured or killed," the
allegations of state-created danger were "clearly sufficient to withstand a motion to dismiss."  *Id.*

The court recognizes the long-standing principle that the enforcement of restraining orders and arrest warrants is discretionary in nature. The failure to serve an arrest warrant does not independently constitute a violation of due process. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 764 (2005) ("After the warrant is sought, it remains within the discretion of a judge whether to grant it, and after it is granted, it remains within the discretion of the police whether and when to execute it."). Here, however, the plaintiffs have alleged more than the mere failure to serve an arrest warrant on Mr. Williams. They have alleged that Lioi "warned Mr. Williams of the warrant and . . . feigned efforts to serve him, including . . . by sending him text messages." (Complaint, ECF No. 1, at 5.) According to the plaintiffs, Lioi "falsely claim[ed] . . . that the warrant allegedly could not be found" when Mr. Williams surrendered himself at the police station. (*Id.*) If true, these actions do not fall within the "well established tradition of police discretion" with respect to arrest warrants but rather represent affirmative steps to enable Mr. Williams to evade arrest and find his wife. *Castle Rock,* 545 U.S. at 760. Moreover, the alleged actions would not be a matter of "merely standing idly by while a private actor harmed" Ms. Williams. *Sloane,* 342 F.Supp.2d at 550. Rather, such actions would suggest that the state had "take[n] action that creates a ripe environment for harm to such an extent that, if the state does not take sufficient action to prevent the harm, it can be considered to have affirmatively caused the harm itself, thus implicating the Due Process Clause." *J.S. v. Thorsen*, 766 F.Supp.2d 695, 710 (E.D. Va. 2011).

c) *Qualified Immunity*

Lioi argues that even if the court concludes his actions violated a constitutional right, he is entitled to qualified immunity. Government actors are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).   The

purpose of qualified immunity is to "balance[] two important interests – the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield officials

from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*

*v. Callahan*, 555 U.S. 223, 231 (2009).

In determining whether qualified immunity applies, courts typically undergo a two-step

process: they decide first "whether the facts that a plaintiff has alleged . . . make out a violation

of a constitutional right," and second, "whether the right at issue was 'clearly established' at the

time of a defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.   Courts have the

discretion, however, to decide which of the two prongs should be addressed first. *Id.* at 236.   "In

the end, the lodestar for whether a right was clearly established is whether the law gave the

officials fair warning that their conduct was unconstitutional." *Iko v. Shreve*, 535 F.3d 225, 238

(4th Cir. 2008) (internal quotations marks and citations omitted).   With respect to a claim of

qualified immunity, the burden of proof and persuasion is on the defendant. *See Wilson v.*

*Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

Lioi argues that the state-created danger doctrine is so unclear and imprecise under

Fourth Circuit law that the rights at issue cannot be said to be "clearly established."   In other

words, he asserts that "[t]he contours of the right [are not] sufficiently clear that a reasonable

official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483

U.S. 635, 640 (1987).

While it is true that the Fourth Circuit has not recognized due process liability on facts

similar to those now before the court, "[t]he lack of decisional authority defining the

constitutional right in this specific context does not imply that the unlawfulness of the conduct

under the Constitution is not apparent." *Pullium*, 221 F. Supp. 2d at 605 n.5.  In considering whether qualified immunity should apply, "the exact conduct at issue need not have been held unlawful in order for the law governing an officer's actions to be clearly established." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005); *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.") (internal quotation marks omitted).  If Lioi took affirmative action to substantially increase the risk Ms. Williams would be injured, he would likely have violated a clearly established right.

Discovery may ultimately demonstrate that Lioi's actions did not violate Ms. Williams's due process rights or that the question is sufficiently unclear that qualified immunity should apply to Lioi's conduct.  Given the incomplete factual record and the gravity of the plaintiffs' well-pled allegations, however, the court will not make that determination at this stage.

Moreover, having concluded that the case will proceed against Lioi on the state-created danger theory of due process liability, the court will reserve judgment on the tort claims pending against Lioi until a more complete record is presented.

For the above stated reasons, the court will deny Lioi's Motion to Dismiss.  A separate Order follows.


July 18, 2012                                      _____/s/_____
Date                                                   Catherine C. Blake
                                                       United States District Judge